# EXHIBIT 1

**Notice and Acknowledgment of**
**Receipt of Summons and Complaint**        (10/12/18) CCG 0063 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Katherine Martinez
_____
                 Plaintiff(s)

vs.

Nando's Restaurant Group, Inc.
_____
                 Defendant(s)

Case No.    2019 CH 10488 _____

Defendant(s)
Amount Claimed:   $ _____

### NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

Nandos's Restaurant Group, Inc.
To: c/o Illinois Corporation Service Corp, Reg. Agt.   Address: 801 Adlai Stevenson Drive _____
            (Name)

City: Springfield _____   State: IL   Zip: 62703 _____

The enclosed summons and complaint are served pursuant to section 2--213 of the Code of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed form to the sender within ____30____ * days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within ____30____ * days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within ____60____ ** days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgment of receipt of summons and complaint will have been mailed on __9/23/2019__ .

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 2

**Notice and Acknowledgment of**
**Receipt of Summons and Complaint**                    **(10/12/18) CCG 0063 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in the above captioned matter at:

(Please print or type)

Name: _____

Address: _____

City: _____ State: _____ Zip: _____

Email: _____

Relationship to Entity/Authority to Receive Service of Process: _____
(Not applicable if your are the named Defendant or Respondent.)

Dated: _____


_____
Signature


\*  (To be completed by the person sending the notice.) Date for return of waiver must be at least 30 days from the date on which the request is sent, or 60 days if the defendant is addressed outside the United States.

\*\*  (To be completed by the person sending the notice.) Date for answering complaint must be at least 60 days from the date on which the request is sent, or 90 days if the defendant is addressed outside the United States.


**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Notice and Acknowledgment of**
**Receipt of Summons and Complaint**                    **(10/12/18) CCG 0063 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Katherine Martinez
_____
                                    Plaintiff(s)     Case No.    2019 CH 10488

                    vs.

Nando's Restaurant Group, Inc.                       Defendant(s)
_____                            Amount Claimed:   $ _____
                                    Defendant(s)

### NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

Nandos's Restaurant Group, Inc.
To: c/o Illinois Corporation Service Corp, Reg. Agt.   Address: 801 Adlai Stevenson Drive
            (Name)

City: Springfield                               State: IL   Zip: 62703

The enclosed summons and complaint are served pursuant to section 2--213 of the Code of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed form to the sender within _____30_____ * days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within _____30_____ * days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within _____60_____ ** days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgment of receipt of summons and complaint will have been mailed on _____9/23/2019_____ .

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 2

Notice and Acknowledgment of
Receipt of Summons and Complaint                                    (10/12/18) CCG 0063 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To
e-file, you must first create an account with an e-filing service provider. Visit http://efile.
illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If
you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/
gethelp.asp.

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in
the above captioned matter at:

(Please print or type)

Name: _____

Address: _____

City: _____ State: _____ Zip: _____

Email: _____

Relationship to Entity/Authority to Receive Service of Process: _____
(Not applicable if your are the named Defendant or Respondent.)

Dated: _____

_____
Signature

\*   (To be completed by the person sending the notice.) Date for return of waiver must be at least 30 days from the date
    on which the request is sent, or 60 days if the defendant is addressed outside the United States.

\*\*  (To be completed by the person sending the notice.) Date for answering complaint must be at least 60 days from the
    date on which the request is sent, or 90 days if the defendant is addressed outside the United States.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**12-Person Jury**

Return Date: No return date scheduled
Hearing Date: 1/9/2020 9:30 AM - 9:30 AM
Courtroom Number: 2008
Location: District 1 Court
    Cook County, IL

FILED
9/10/2019 4:46 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10488

6519482

FILED DATE: 9/10/2019 4:46 PM  2019CH10488

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

KATHERINE MARTINEZ, individually and on
behalf of all others similarly situated,

        *Plaintiff,*

    v.

NANDO'S RESTAURANT GROUP, INC.

        *Defendant,*

Case No.:   **2019CH10488**

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Katherine Martinez ("Martinez" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Nando's Restaurant Group, Inc. ("Nando's") to put a stop to its unlawful collection, use, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to Plaintiff's own acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1.     Defendant Nando's is a Delaware corporation that operates the popular Nando's Peri Peri chain of restaurants. Nando's has locations in more than 20 countries, including dozens in the United States and 12 in Illinois.

2.     When employees work at Nando's, they are required to scan their fingerprint in its biometric time tracking system as a means of authentication, instead of using only key fobs or other identification cards.

3.     While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be

FILED DATE: 9/10/2019 4:46 PM    2019CH10488

changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

4. In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

5. A black market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

6. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira,

2

FILED DATE: 9/10/2019 4:46 PM 2019CH10488

*Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

7.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

8.     Despite this law, Nando's disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Nando's has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

9.     Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

10.     Plaintiff is a natural person and citizen of the State of Illinois.

11.     Defendant Nando's headquartered in Washington D.C. and operates approximately 10 locations in Cook County, Illinois.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because

3

Defendant conducts business transactions in Illinois, and has committed tortious acts in Illinois.

13.     Venue is proper in Cook County because Defendant operates in Cook County.

### FACTUAL BACKGROUND

**I.      The Biometric Information Privacy Act.**

14.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

15.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

16.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

4

FILED DATE: 9/10/2019 4:46 PM   2019CH10488

FILED DATE: 9/10/2019 4:46 PM    2019CH10488

17.    The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

18.    BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

19.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

20.    The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last

5

FILED DATE: 9/10/2019 4:46 PM    2019CH10488

interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

21.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**II.     Nando's Violates the Biometric Information Privacy Act.**

22.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

23.     Unfortunately, Nando's specifically failed to take note of the passage of the BIPA. Nando's continues to collect, store, and use its employees' biometric data in violation of the BIPA.

24.     Specifically, when employees work at Nando's, they are required to have their fingerprints scanned in order to enroll them in its fingerprint database.

25.     Nando's uses an employee time tracking system that requires employees to use their fingerprints as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprint to "punch" in to or out of work.

26.     Nando's failed to inform its employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

27.     Nando's similarly failed to provide its employees with a written, publicly available

policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Nando's databases—or if they ever will be.

28.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Nando's —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Nando's disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

29.     Ultimately, Nando's disregards its employees' statutorily protected privacy rights by violating the BIPA.

**FACTS SPECIFIC TO PLAINTIFF**

30.     Plaintiff worked for Nando's in Illinois, ending in 2018. Her paystubs had Nando's as the payee.

31.     As an employee, Nando's required Plaintiff to scan Plaintiff's fingerprint so that it could use it as an authentication method to track time. Nando's subsequently stored Plaintiff's fingerprint data in its databases.

32.     Each time Plaintiff began and ended a workday, Nando's required a scan of Plaintiff's fingerprints.

FILED DATE: 9/10/2019 4:46 PM   2019CH10488

33.    Nando's never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

34.    Similarly, Nando's never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

35.    Plaintiff never signed a written release allowing Nando's to collect or store fingerprints.

36.    Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Nando's violations of the BIPA alleged herein.

37.    Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Nando's has caused.

## CLASS ALLEGATIONS

38.    **Class Definition**: Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Nando's while residing in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

39.    **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured,

8

FILED DATE: 9/10/2019 4:46 PM 2019CH10488

received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a) whether Defendant collected, captured, or otherwise obtained Plaintiff and the Class' biometric identifiers or biometric information;

b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

d) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

e) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f) whether Defendant complies with any such written policy (if one exists); and

g) whether Defendant used Plaintiff and the Class' fingerprints to identify them.

41. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and their counsel are committed to

FILED DATE: 9/10/2019 4:46 PM   2019CH10488

vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

42.     **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of**
**BIPA Section 15(a): Failure to Institute, Maintain and Adhere to Publicly-Available**
**Retention Schedule**

43.     Plaintiff incorporate the foregoing allegations as if fully set forth herein.

44.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the

10

FILED DATE: 9/10/2019 4:46 PM   2019CH10488

company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

45.     Defendant fails to comply with these BIPA mandates.

46.     Defendant is an entity registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

47.     Plaintiffs are individuals who had their "biometric identifiers" (in the form of their fingerprints) collected by Defendant, as explained in detail above, *supra*. *See* 740 ILCS 14/10.

48.     Plaintiff's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

49.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

50.     Upon information and belief, Defendant lacked retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

51.     On behalf of themselves and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740

11

ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

FILED DATE: 9/10/2019 4:46 PM   2019CH10488

## SECOND CAUSE OF ACTION
### Violation of BIPA Section 15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

52.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

54.     Defendant fails to comply with these BIPA mandates.

55.     Defendant is an entity registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

56.     Plaintiff is an individual who had "biometric identifiers" (in the form of fingerprints) collected by Defendants, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

57.     Plaintiff' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

FILED DATE: 9/10/2019 4:46 PM   2019CH10488

58.     Defendant systematically and automatically collected, used, stored, and disclosed Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

59.     Defendant did not inform Plaintiff in writing that their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated, nor did Defendant inform Plaintiff in writing of the specific purpose and length of term for which biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

60.     By collecting, storing, and using Plaintiff's' and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

61.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).


**THIRD CAUSE OF ACTION**
**Violation of BIPA Section 15(d): Disclosure of Biometric Identifiers and**
**Information Before Obtaining Consent**

FILED DATE: 9/10/2019 4:46 PM 2019CH10488

62.     Plaintiff incorporate the foregoing allegations as if fully set forth herein.

63.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

64.     Each Defendant fails to comply with this BIPA mandate.

65.     Defendant is an entity registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

66.     Plaintiff is an individual who had their "biometric identifiers" (in the form of their fingerprints) collected by Defendants, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

67.     Plaintiff's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

68.     Upon information and belief, by utilizing a biometric time clock, Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric identifiers and/or biometric information to at least the payroll company hired by the Defendant without first obtaining the consent required by 740 ILCS 14/15(d)(1).

69.     By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

70.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use

FILED DATE: 9/10/2019 4:46 PM    2019CH10488

of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

71.     The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

72.     The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.,* when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

73.     Unfortunately, Nando's fails to comply with these BIPA mandates.

74.     Nando's qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

75.     Plaintiff and the Class are individuals who had their "biometric identifiers"

FILED DATE: 9/10/2019 4:46 PM    2019CH10488

collected by Nando's (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

76.     Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

77.     Nando's violated 740 ILCS 14/15(b)(3) by negligently failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

78.     Nando's violated 740 ILCS 14/15(b)(1) by negligently failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

79.     Nando's violated 740 ILCS 14/15(b)(2) by negligently failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

80.     Nando's violated 740 ILCS 14/15(a) by negligently failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

81.     By negligently collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Nando's violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

82.     On behalf of themselves and the Class, Plaintiff seek: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant

16

FILED DATE: 9/10/2019 4:46 PM    2019CH10488

to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $1,000 per violation for each of Defendant's negligent violations of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and for the Class, respectfully request that the Court enter an Order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

B.      Declaring that Defendant's actions, as set out above, violate the BIPA;

C.      Awarding damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20;

D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E.   Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.   Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demand a trial by jury for all issues so triable.

FILED DATE: 9/10/2019 4:46 PM   2019CH10488

Dated: September 9, 2019

Respectfully submitted,

Katherine Martinez individually and on behalf of all
others similarly situated,

By: ___/s/_____David Fish_____
        One of Plaintiff's Attorneys


David Fish
dfish@fishlawfirm.com
John Kunze
kunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
admin@fishlawfirm.com

Return Date: No return date scheduled
Hearing Date: 12/9/2019 9:00 AM - 9:00 AM
Courtroom Number:
Location:

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
9/23/2019 4:03 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10488

KATHERINE MARTINEZ, individually and on
behalf of all others similarly situated,

6680749

*Plaintiff,*

v.

Case No.:   2019 CH 10488

NANDO'S RESTAURANT GROUP, INC.

*Defendant,*

FILED DATE: 9/23/2019 4:03 PM   2019CH10488

## NOTICE OF MOTION

To:    Nando's Restaurant Group, Inc. / c/o IL Corporation Service Corp., Reg Agt
       801 Adlai Stevenson Drive, Springfield, IL 62703

PLEASE TAKE NOTICE that on December 9, 2019 at 9:00 am, or as soon thereafter as counsel can be heard, I shall appear before the Honorable Judge Presiding in Courtroom 2008 of the Richard J. Daley Center, 50 West Washington, Chicago, Illinois to present the **Plaintiff's Motion for Class Certification and Request for Discovery on Certification Issues**, a copy of which is attached hereto and hereby served upon you.

Dated: September 23, 2019             Respectfully submitted,

                                      **Katherine Martinez, individually and**
                                      **on behalf of all others similarly situated.**

                             By:    /s/   David J. Fish
                                    One of its Attorneys

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on September 23, 2019 before 5:00 p.m., he caused the foregoing notice and response to be served on the above party by U.S. Mail.

                             By:    /s/David J. Fish
                                    One of Plaintiff's Attorneys

THE FISH LAW FIRM, P.C.
200 E 5th Ave., Suite 123
Naperville, IL 60563
(630) 355-7590
admin@fishlawfirm.com
Cook County Atty No. 44086

Return Date: No return date scheduled
Hearing Date: 12/9/2019 9:00 AM - 9:00 AM
Courtroom Number:
Location:

FILED
9/23/2019 4:03 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10488

6680749

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

KATHERINE MARTINEZ, individually and on
behalf of all others similarly situated,

*Plaintiff,*

v.

NANDO'S RESTAURANT GROUP, INC.

*Defendant,*

Case No.:   2019 CH 10488

FILED DATE: 9/23/2019 4:03 PM   2019CH10488

---

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND REQUEST FOR DISCOVERY ON CERTIFICATION ISSUES

Plaintiff Katherine Martinez ("Katherine" or "Plaintiff") alleges that Defendant Nando's Restaurant Group, Inc. ("Defendant") systematically violated the Biometric Information Privacy Act ("BIPA") 740 ILCS 14/1, *et seq*. This case is well suited for class certification under 735 ILCS 5/2-801. Specifically, Plaintiff seeks to certify a class consisting of hundreds of former and current similarly-situated employees who worked for companies that had their fingerprints unlawfully collected, captured, received, otherwise obtained, or disclosed by Defendant during the applicable statutory period in violation of BIPA. The question of liability is a legal question that can be answered in one fell swoop. As Plaintiff's claims, and the claims of similarly-situated individuals, all arise from Defendant's uniform policies and practices, they satisfy the requirement of 735 ILCS 5/2-801 and should be certified.

## I.   RELEVANT BACKGROUND

Major national corporations started using locations in Illinois in the early 2000s to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its

FILED DATE: 9/23/2019 4:03 PM    2019CH10488

relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

The Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. was enacted in 2008, arising from concerns that these experimental uses of finger-scan technologies created a "very serious need of protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. Under the Act, it is unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless it first:

(1) Informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

(2) Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) Receives a written release executed by the subject of the biometric identifier or biometric information." 740 ILCS 14/15(b).

Although there may be benefits with using biometrics in the workplace, there are also serious risks. Unlike ID badges– which can be changed or replaced if stolen or compromised – fingerprints are a unique, permanent biometric identifier associated with each individual. These biometrics are biologically unique to the individual; once compromised, the individual has *no* means by which to prevent identity theft, unauthorized tracking, or other unlawful or improper use of this information. This exposes individuals to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed – as in the recent Equifax, Home Depot, Google+ and Facebook/Cambridge Analytica data breaches– individuals have no means to prevent the misappropriation and theft of their proprietary biometric makeup. Recognizing the need to protect its citizens from harms like these, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

2

## A. <u>Factual Allegations</u>

Plaintiff filed this class action against Defendant to redress Defendant's unlawful collection, use, storage, and disclosure of Illinois employees' biometric information under BIPA. In this Class Action Complaint, Plaintiff provided detailed allegations that Illinois employees who use Defendant's technology as a condition of employment were, and continue to be, universally required to scan their fingerprints for enrollment in an employee database(s) as a requirement of their employment, but are not: (1) informed in writing of the purpose(s) and length of time for which handprint data is being collected, stored, used, and disseminated by Defendant; (2) provided a publicly available retention schedule or guidelines for permanent destruction of the biometric data by Defendant; and (3) provided (nor did it execute) a written release for Defendant, as required by BIPA. *See* Compl. ¶¶ 5, 20-33,43,45-51

Plaintiff was required to use Defendant's biometric device during her work for Defendant. *Id*. ¶¶ 27,28,29 As a condition of employment, Plaintiff was required to scan her fingerprints each time she clocked in or out of work. *Id*. ¶¶ 28,29. Defendant subsequently stored Plaintiff's handprint data in its employee database. *Id*. ¶ 5,20,28. Plaintiff was required to scan her fingerprints each time they accessed Defendant's biometric device. *Id*. ¶¶ 21,28,29. However, Defendant failed and continues to fail to inform Illinois employees, including Plaintiff, of the extent of the purposes for which it collects individuals' sensitive biometric data or to whom the data is disclosed. *Id*. ¶¶ 23,30,48. Defendant similarly failed to provide Illinois employees, including Plaintiff, with a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying individuals' handprint data when the initial purpose for collecting or obtaining their handprint is no longer relevant, as required by BIPA. *Id*. ¶¶ 5, 24, 50. Illinois employees, including Plaintiff, have no knowledge when they leave the company of when – if ever – their biometric identifiers will be removed from Defendant's database(s). *Id*. ¶¶ 5, 24,30,31,48,49,50.

3

FILED DATE: 9/23/2019 4:03 PM   2019CH10488

Illinois workers are not told what might happen to their biometric data if and when Defendant merges with another company or, worse, if and when Defendant's entire businesses fold. *Id.* Since Defendant neither publishes a BIPA-mandated data retention policy nor disclose the purposes for its collection of biometric data, Illinois employees, including Plaintiff, have no idea whether Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. *Id.* Nor are Illinois employees told to whom Defendant currently discloses their biometric data or what might happen to their biometric data in the event of a merger or a bankruptcy. *Id.* Finally, Defendant never secured a written release executed by any of Illinois' employees, including Plaintiff, permitting it to collect, store, use, and disseminate employees' biometric data, as required by BIPA. *Id.* ¶¶ 5,32,47 .

Accordingly, Defendant's practices violated BIPA. As a result of Defendant's violations, Plaintiff and similarly-situated individuals were subject to Defendant's common and uniform policies and practices and were victims of its scheme to unlawfully collect, store, use, and disseminate Illinois employees' biometric data in direct violation of BIPA. Plaintiff now seeks class certification for the following similarly-situated individuals, defined as:

> All individuals working for Defendant that use Defendant's biometric technology in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained or disclosed by Defendant during the applicable statutory period.

Given Defendant's standard practices defined above and the straightforward and common legal questions presented in this case, Plaintiff now moves for class certification. Notably, this motion is being filed shortly after the Complaint was filed and before Defendant has responded. For the reasons discussed herein, Plaintiff's request should be granted.

## II.   STANDARD FOR CLASS CERTIFICATION

"The basic purpose of a class action is the efficiency and economy of litigation." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App. (1st) 131465, ¶ 9 (Ill. App. Ct. May 8, 2015) (citing *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981)). "In determining whether to certify a proposed class, the

4

trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007)). Under Section 2801 of the Code of Civil Procedure, a class may be certified if the following four requirements are met:

(1) the class is so numerous that a joinder of all members is impracticable;

(2) there are questions of fact or law common to the class that predominate over any questions affecting only individual members;

(3) the representative parties will fairly and adequately protect the interest of the class; and

(4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

*See Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 447 (2006) (citing 735 ILCS 5/2-801).

Notably, "[a] trial court has broad discretion in determining whether a proposed class meets the requirements for class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez*, 378 Ill. App. 3d at 53). Here, the allegations and facts in this case amply demonstrate that the four certification factors are met.

## III.    ARGUMENT

Plaintiff's claims here are especially suited for class certification because Defendant treated all Illinois employees identically for the purposes of applying BIPA. All of the putative class members in this case were uniformly subjected to the same illegal and unlawful collection, storage, use, and dissemination of their biometric data that was required as a condition of employment throughout the class period. Plaintiff meets each of the statutory requirements for maintenance of this suit as a class action. Thus, the class action device is ideally suited and is far superior to burdening the Court with many individual lawsuits to address the same issues, undertake the same discovery, and rely on the same testimony.

### A. The Class Is So Numerous That Joinder of All Members Is Impracticable.

Numerosity is not dependent on a plaintiff setting forth a precise number of class members or a listing of their names. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("Of course, plaintiffs need not demonstrate a precise figure for the class size, because a good-faith, non-speculative estimate will suffice; rather, plaintiffs need demonstrate only that the class is sufficiently numerous to make joinder of all of the members impracticable.") (internal citations omitted); *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710-11 (1st Dist. 1981) ("It is not necessary that the class representative name the specific individuals who are possibly members of the class."). Courts in Illinois generally find numerosity when the class is comprised of at least 40 members. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990).

In the present case, there can be no serious dispute that Plaintiff meets the numerosity requirement as Defendant employs hundreds of Illinois workers who were subjected to the same policy. The class of potential plaintiffs is sufficiently large to make joinder impracticable. As a result of Defendant's violations of BIPA, Plaintiff and all similarly situated individuals were subjected to Defendant's common and uniform policies and practices and were victims of Defendant's scheme to unlawfully collect, store, use, and disseminate their extremely personal and private biometric data in direct violation of BIPA. The precise number in the class cannot be determined until discovery records are obtained from Defendant. Nevertheless, class membership can be easily determined by reviewing Defendant's records and those of its customers. *See e.g., Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 233 (1st Dist. 2010) (reversing Circuit Court's denial of class certification and holding that class was certifiable over defendant's objection that "the proposed class was not ascertainable, because the process of reviewing defendant's transaction files to determine class membership would be burdensome"). Once Defendant's records are obtained, the Court will know the precise number of persons affected.

6

FILED DATE: 9/23/2019 4:03 PM    2019CH10488

Further, recognizing the need to protect its citizens from harms such as identity theft, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. A class action would help ensure that Plaintiff and all other similarly-situated individuals have a means of redress against Defendant for its widespread violations of BIPA.

**B.      Common Questions Of Law And Fact Exist That Predominate Over Any Questions Solely Affecting Individual Members Of The Class.**

Courts analyze commonality and predominance under Section 2-801 by identifying the substantive issues that will control the outcome of the case. *See Bemis v. Safeco Ins. Co. of Am.*, 407 Ill. App. 3d 1164, 1167 (5th Dist. 2011); *Cruz*, 383 Ill. App. 3d at 773. The question then becomes whether those issues will predominate and whether they are common to the class, meaning that "favorable adjudication of the claims of the named plaintiffs will establish a right of recovery in other class members." *Cruz*, 383 Ill. App. 3d at 773. As stated by the Court of Appeals, the question is will "common . . . issues be the subject of the majority of the efforts of the litigants and the court[?]" *Bemis*, 407 Ill. App. 3d at 1168. The answer here is "yes." Common questions of law or fact are typically found to exist when "the claims of the individual class members are based upon the common application of a statute or where the proposed class members are aggrieved by the same or similar conduct or a pattern of conduct." *Bueker v. Madison Cty.*, 2016 IL App (5th) 150282, ¶ 27; *McCarthy v. LaSalle Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 628, 634 (1st Dist. 1992).

At the heart of this litigation is Defendant's culpable conduct under BIPA. The issues are simple and straightforward legal questions that plainly lend themselves to class-wide resolution. Notwithstanding the clear and unequivocal requirements of the law, Defendant disregarded the statutorily-protected privacy rights of Plaintiff and other similarly-situated individuals and unlawfully collected, stored, used, and disseminated their biometric data in direct violation of BIPA. Specifically, Defendant has violated and continues to violate BIPA because it failed and

7

continues to fail to: (1) inform Plaintiff or the putative class in writing of the specific purpose(s) and length of time for which their fingerprints were being collected, stored, used, and disseminated as required by BIPA; (2) provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the putative class's fingerprints, as required by BIPA; and (3) receive a written release from Plaintiff or the putative class to collect, capture, use, otherwise obtain or disseminate their fingerprints, as required by BIPA. (Compl. ¶¶ 5, 20-33,43,45-51 Defendant treated the entire proposed class in precisely the same manner, resulting in identical violations of BIPA. (*Id.*) These common practices create common issues of law and fact. In fact, the legality of Defendant's collection, storage, use, and dissemination of Illinois employees' biometric data is the focus of this litigation.

Indeed, once this Court determines whether Defendant's practices of collecting, storing, and using individuals' biometric data without adhering to the specific requirements of BIPA constitutes violations thereof, liability for the claims of class members will be determined in one stroke. The material facts and issues of law are substantially the same for the members of the class, and therefore these common issues could be tried such that proof as to one claimant would be proof as to all members of the class. This alone establishes predominance. The only remaining questions will be whether Defendant's violations caused members of the class to suffer damages and the proper measure of damages and injunctive relief, which in and of themselves are questions common to the class. Accordingly, a favorable adjudication of the Plaintiff's claims in this case will establish a right of recovery to all other class members, and thus the commonality and predominance requirements weigh in favor of certification of the class.

C.      **The Named Plaintiff And Class Counsel Are Adequate Representatives Of The Class.**

When evaluating adequacy, courts look to whether the named plaintiff has the same interests as those of the class and whether he or she will fairly represent them. *See CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 16. In this case, Plaintiff's interest arises from statute. The class

8

FILED DATE: 9/23/2019 4:03 PM   2019CH10488

representative is a member of the proposed class and will fairly and adequately protect the class's interests. Plaintiff, as a condition of employment, was required to have her fingerprints scanned by one of Defendant's biometric devices. *Compl.* ¶¶ 28, 29. Defendant subsequently stored Plaintiff's fingerprints in its database(s). *Id.* ¶¶ 5,21,28. Plaintiff has never been informed of the specific limited purposes (if any) or length of time for which Defendant collected, stored, used, or disseminated her biometric data. *Id.* ¶¶ 5,30,48. Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor have he ever been informed whether Defendant will ever permanently delete her fingerprints. *Id.* ¶¶ 5,31,49. Finally, Plaintiff has never been provided, nor did he ever sign, a written release allowing Defendant to collect, store, use, or disseminate her fingerprints. *Id.* ¶¶ 5,32,47. Thus, Plaintiff was a victim of the same uniform policies and practices as the individuals he seeks to represent and is not seeking any relief that is potentially antagonistic to other members of the class. What is more, Plaintiff has the interests of those class members in mind, as demonstrated by her willingness to sue on a class-wide basis and step forward as the class representatives, which subjects them to discovery.

Proposed Class Counsel, The Fish Law Firm PC will also fairly and adequately represent the class. Proposed Class Counsel are highly qualified and experienced attorneys. The Fish Law Firm, P.C. has extensive experience in class action litigation and its attorneys have been appointed class counsel on numerous occasions; they also are involved in more than a dozen cases involving biometric privacy violations. (See Exhibit A.) Thus, proposed Class Counsel, too, are adequate and have the ability and resources to manage this lawsuit.

**D.** **A Class Action Is The Appropriate Method For Fair And Efficient Adjudication Of This Controversy.**

Finally, a class action is the most appropriate method for the fair and efficient adjudication of this controversy, rather than bringing individual suits which could result in inconsistent determinations and unjust results. "It is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class." *P.J.'s Concrete*

9

*Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "The purported class representative must establish that a successful adjudication of its individual claims will establish a right of recovery or resolve a central issue on behalf of the class members." *Id.*

Here, Plaintiff's claim stems from Defendant's common and uniform policies and practices, resulting in common violations of BIPA for all members of the class. Thus, class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. *Wenthold v. AT&T Technologies, Inc.*, 142 Ill. App. 3d 612 (1st Dist. 1986). Without a class, the Court would have to hear dozens, if not hundreds, of additional individual cases raising identical questions of liability. Moreover, class members are better served by pooling resources rather than attempting to litigate individually. *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶¶ 28-30 (certifying TCPA class where statutory damages were alleged and rejecting arguments that individual lawsuits would be superior). In the interests of justice and judicial efficiency, it is desirable to concentrate the litigation of all class members' claims in a single forum. For all of these reasons, the class action is the most appropriate mechanism to adjudicate the claims in this case.

### E. The Court Should Allow Supplemental And Deferred Briefing Following Discovery.

Defendant's practices and policies are uniform. Plaintiff believes that the present Motion should be supplemented based upon very limited initial discovery. Plaintiff is moving as early as possible for class certification in part to avoid the "buyoff problem," which occurs when a defendant seeks to settle with a class representative on individual terms in an effort to moot the class claims asserted by the class representative. Plaintiff is also moving for class certification now because the class should be certified, and because no meaningful discovery is necessary to establish that fact. The instant motion is far more than a placeholder or barebones memorandum. Rather, Plaintiff's full arguments are set forth based on the facts known at this extremely early

10

stage of litigation. Should the Court wish for more detailed factual information, the briefing schedule should be extended.

## IV.    Conclusion

For the reasons stated above, Plaintiff respectfully request that the Court enter an Order: (1) certifying Plaintiff's claims as a class action; (2) appointing Plaintiff as Class Representative; (3) appointing The Fish Law Firm, P.C. as Class Counsel; and (4) authorizing court-facilitated notice of this class action to the class. In the alternative, this Court should allow discovery, allow Plaintiff to supplement this briefing, and defer response and reply briefs.

Date: September 18, 2019                          Respectfully Submitted,

                                                  /s/ David J. Fish

                                                  David Fish
                                                  Seth Matus
                                                  Kimberly Hilton
                                                  John Kunze
                                                  **THE FISH LAW FIRM, P.C.**
                                                  200 East Fifth Avenue, Suite 123
                                                  Naperville, Illinois 60563
                                                  630.355.7590
                                                  630.778.0400
                                                  dfish@fishlafirm.com
                                                  smatus@fishlawfirm.com
                                                  khilton@fishlawfirm.com
                                                  jkunze@fishlawfirm.com

FILED DATE: 9/23/2019 4:03 PM   2019CH10488

11

FILED DATE: 9/23/2019 4:03 PM   2019CH10488

# Exhibit A

FILED DATE: 9/23/2019 4:03 PM    2019CH10488

## DECLARATION OF DAVID J FISH

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true:

1.    I am an attorney admitted to practice before the Supreme Court of the State of Illinois. I am entering this declaration in support of Plaintiffs' Motion for and Memorandum in Support of Class Certification. This declaration is based upon my personal knowledge except where expressly noted otherwise. If called upon to testify to the matters stated herein, I could and would competently do so.

2.    I am the founder of The Fish Law Firm, P.C.

3.    I graduated #2 in my law school class from Northern Illinois University College of Law in 1999. Prior to starting my own firm, I was employed by other law firms engaged in litigation in and around Chicago, Illinois including, Jenner & Block in Chicago as a summer associate, Klein, Thorpe & Jenkins in Chicago as an associate and The Collins Law Firm, P.C. as an associate.

4.    I have extensive experience representing employees and employers in labor and employment disputes. I have handled disputes with the Illinois Department of Labor, the United States Department of Labor, the Illinois Department of Human Rights, the National Labor Relations Board, the Equal Employment Opportunity Commission, and in the state and federal courts in Illinois. I have litigated dozens of cases in the United States District Court for the Northern District of Illinois.

1

FILED DATE: 9/23/2019 4:03 PM    2019CH10488

5.      I am the former chair of the DuPage County Bar Association's Labor and Employment Committee and served on the Illinois State Bar Association's Labor and Employment Committee Section Council.  I also am a member of the National Employment Lawyers Association.

6.      I have, on several occasions, lectured at educational seminars for lawyers and other professionals. I moderated a continuing legal education panel of federal magistrates and judges on the Federal Rules of Civil Procedure through the Illinois State Bar Association. I have presented on electronic discovery rules and testified before the United States Judicial Conference in Dallas, Texas regarding electronic discovery issues.  I have provided several CLE presentations on issues relating to labor and employment law.

7.      I have authored, or co-authored, many articles, including: "Enforcing Non-Compete Clauses in Illinois after Reliable Fire", Illinois Bar Journal (April 2012); "Top 10 wage violations in Illinois", ISBA Labor and Employment Newsletter (August, 2017); "Physician Non-Complete Agreements in Illinois:  Diagnosis—Critical Condition; Prognosis- Uncertain" DuPage County Bar Journal (October 2002); "Are your clients' arbitration clauses enforceable?" Illinois State Bar Association, ADR Newsletter (October 2012); "The Legal Rock and the Economic Hard Place: Remedies of Associate Attorneys Wrongfully Terminated for Refusing to Violate Ethical Rules", Univ. of W. Los Angeles Law Rev. (1999); "Zero-Tolerance Discipline in Illinois Public Schools" Illinois Bar Journal (May 2001); "Ten Questions to Ask Before Taking a Legal-Malpractice Case" Illinois Bar Journal (July 2002); "The Use Of The Illinois Rules of Professional Conduct to Establish The Standard of Care In Attorney Malpractice Litigation: An Illogical Practice", Southern Illinois Univ. Law Journal (1998); "An Analysis of

FILED DATE: 9/23/2019 4:03 PM 2019CH10488

Firefighter Drug Testing under the Fourth Amendment", International Jour. Of Drug Testing (2000); "Local Government Web sites and the First Amendment", Government Law, (November 2001, Vol. 38).

8. Some examples of class, collective, and/or employment litigation in which I have served as a lawyer include:

a.    *Larson v. Lennox Industries*, 2013 WL 105902 (N.D. Ill, 12 c 2879)(conditional certification granted in FLSA action alleging that store managers were misclassified as exempt from receiving overtime pay).

b.    *Nelson v. UBS Global Management*, No. 03-C-6446, 04 C 7660 (N. D. Ill.)(ERISA class action on behalf of thousands of BP Amoco employees who had Enron debt purchased as part of their money market fund; recovery of approximately $7 million).

c.    *Sotelo v. DirectRevenue*, No. 05-2562 (N.D. Ill. filed Apr. 29, 2005)(class action alleging that company placed "spyware" on consumers' computers; resulted in a settlement that mandated significant disclosures to computer users before unwanted software could by placed on their computers, see also Julie Anderson, *Sotelo v. Directrevenue, LLC: Paving the Way for Spyware-Free Internet*, 22 Santa Clara High Tech. L.J. 841 (2005).

d.    *Franzen v. IDS Futures Corporation,* 06 CV 3012 (N. D. Ill. 2006)(recovery of millions of dollars for more than 1,000 limited partners in an investment fund that lost value as a result of the Refco bankruptcy).

e.    *Pope v. Harvard Bancshares*, 06 CV 988, 240 F.R.D 383 (N. D. Ill. 2006)(class action recovery of $1.3 million for former shareholders of community bank who had stock repurchased in a reorganization).

3

FILED DATE: 9/23/2019 4:03 PM  2019CH10488

      f.      *Pietrzycki v. Heights Tower Serv., Inc.*, 197 F. Supp. 3d 1007 (N.D. Ill. 2016)(finding Fish appropriate to represent Class in wage and hour claims relating to overtime).

      g.      *Schrock v. Wenner Media LLC*, et al, 10-cv-7230 (defended marketing company in putative nationwide class action alleging violations of TCPA for unsolicited text message marketing; our client dismissed from case voluntarily without payment).

      h.      *G.M. Sign Inc. v. Pastic-Mach Corporation*, 12-cv-3149 and 10-cv-7854 (defended putative nationwide class action alleging violations of TCPA for unsolicited junk faxes, both cases dismissed without payment by client).

      i.      *Ismael Salam v Nationwide Alarm LLC*, 14-cv-1720 (defended putative nationwide class action alleging violations of TCPA for unsolicited calls to cellular telephone; our client dismissed with prejudice voluntarily without payment).

      j.      *Cope v. Millhurst Ale House of Yorkville, Inc.* 14-cv-9498 (collective action for FLSA claims settled on collective basis).

      k.      *Girolamo v. Community Physical Therapy & Associates, Ltd*, 15-cv-2361 (alleging claims under FLSA, IMWL, IWPCA).

      l.      *Jones et al v. Sistar Beauty Corporation*, 15-cv-3359 (collective action alleging FLSA and class action alleging Illinois Minimum Wage Law "IMWL" claims; final judgment entered).

      m.      *Magallan v. Pancho's Family Restaurant, LLC*, 15-cv-5578 (defending FLSA and IMWL claims).

      n.      *Mello et al v. Krieger Kiddie Corporation*, 15-cv-5660 (collective and putative class action alleging claims under FLSA, IMWL, IWPCA).

      o.      *Lampley v. Aryaani dba Subway*, 15-cv-9332 (collective action alleging claims under FLSA, IMWL, IWPCA).

FILED DATE: 9/23/2019 4:03 PM   2019CH10488

p.      *Kalechstein v. Mehrdad Abbassian*, M.D., P.C., 15-cv-5929 (defending IWPCA claims).

q.      *Barker et al v. Septran, Inc*, 15-cv-9270 (IMWL and putative collective claims under the FLSA and IWPCA).

r.      *Simpkins v. DuPage Housing Authority*, 15-cv-9103 (includes claims under FLSA and IMWL).

s.      *Day v. Stockton Construction Group, LLC*, 15-cv-5884 (collective claims brought under FLSA, IMWL, and IWPCA).

t.      *Wehrle v. Midwest Sleep Associates, LLC*, 15-cv-4397 (collective action complaint alleging claims under FLSA and IMWL).

u.      *Sharples et al v. Krieger Kiddie Corporation*, 2013 CH 25358 (Cir. Court Cook County) (Illinois Wage Payment and Collection Act IWPCA class action claims; final approval of class wide settlement).

v.      *Wendell H. Stone Co. v. Metal Partners Rebar, 16-cv-8285* (defending TCPA class action).

w.      *Barker v. Septran,* 15-cv-9270 (Rule 23 IWPCA claim for vacation forfeiture and separate FLSA claims for overtime).

x.      *Andrews v. Rockford Process Control, Inc.*, 3:17-cv-50171 (class and collective claims brought under the FLSA and the IMWL).

y.      *Kusinski v. MacNeil Automotive Products Limited*, 17-cv-03618 (class and collective claims under the FLSA and the IMWL; final approval of class settlement entered);

z.      *Grace v. Brickstone,* 17-cv-7849 (class and collective claims under the FLSA, IMWL, and IWPCA; final approval of class settlement).

FILED DATE: 9/23/2019 4:03 PM   2019CH10488

     I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

     Executed this 8th day of February, 2019 at Naperville, Illinois.


                  /s/ David J. Fish

                    David J. Fish

The Fish Law Firm, P.C.
200 E. 5th Ave., Suite 123
Naperville, IL 60563

$0.500
US POSTAGE
FIRST-CLASS
FROM 60563
SEP 23 2019
stamps
endicia



The Fish Law Firm, P.C.
200 E. 5th Ave., Suite 123
Naperville IL 60563-3173



US POSTAGE & FEES PAID
1 OZ FIRST-CLASS PARCEL RATE
ZONE 3
ComBasPrice

062S0007369175
FROM 60563

stamps
endicia
09/23/2019

# USPS FIRST CLASS MAIL®

The Fish Law Firm, P.C.
200 E. 5th Ave., Suite 123
NAPERVILLE IL 60563

C059

SHIP
TO:
Nando's Restaurant Group, Inc.
C/o Illinois Corporation Service Corp.
801 Adlai Stevenson Drive
Springfield IL 62703-4261

## USPS TRACKING #



9400 1118 9956 1535 5257 99

(Bulletin d'expédition déclaration en incl.s)

PS Form 2976-E, July 2013
PSN 7630-03-000-5174