IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHERINE MARTINEZ, individually and behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:19-cv-07012 |
| v. | Honorable Sara L. Ellis |
| NANDO'S RESTAURANT GROUP, INC., | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

David Fish (dfish@fishlawfirm.com)
Mara A. Baltabols (mara@fishlawfirm.com)
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
docketing@fishlawfirm.com

**I.     INTRODUCTION**

Plaintiff Katherine Martinez ("Plaintiff" or "Class Representative") is a former employee of Defendant Nando's Restaurant Group, Inc. ("Nando's" or "Defendant"). In this Action, the Class Representative alleges that Nando's violated the Biometric Information Privacy Act ("BIPA") by collecting, possessing, and disclosing its Illinois employees' biometric data through a finger scan timekeeping system without following BIPA's written disclosure and consent requirements. Defendant has denied the allegations and denied all wrongdoing. Through a settlement conference with the Honorable Jeffrey Cole, the parties reached a $1,427,000.00 class settlement for 1,427 Settlement Class Members; a gross settlement sum of $1,000 per Class Member. In addition, the parties' settled Plaintiff's individual Charge of Discrimination against Defendant for $5,000. Because the settlement is fair, reasonable, and meets all requirements under Rule 23, the Court should grant preliminary approval and enter the parties' proposed order, attached as Exhibit 3.

**II.     STATEMENT OF FACTS AND SUMMARY OF THE LITIGATION**

On September 10, 2019, Plaintiff Martinez, individually and behalf of all other similarly situated, initiated this civil lawsuit against Defendant Nando's in the Circuit Court of Cook County, Illinois, by filing a Class Action Complaint ("Complaint") captioned *Katherine Martinez v. Nando's Restaurant Group, Inc.,* No. 2019 CH 10488 (the "State Court Action"). On October 24, 2019, Nando's filed a Notice of Removal of the State Court Action pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453(b) to the United States District Court for the Northern District of Illinois, and the case was assigned Civil Action No. 1:19-cv-07012. ECF 1. On November 21, 2019, Defendant filed an Answer denying the substantive allegations in the Complaint and asserting numerous defenses. ECF 10.

Beginning in 2019, the Parties began discussing the potential for a class-wide settlement and exchanged information on the underlying facts of the case and size of the class. The Defendant also raised its ability to satisfy a judgment on a class-wide basis and, therefore, the Defendant shared extensive information about its financial condition. The Defendant and Defendant's counsel was cooperative throughout this process and allowed its Chief Financial Officers to be interviewed by Plaintiff's counsel regarding the financial information that had been exchanged.

The Parties then agreed that a settlement conference with the magistrate judge would be productive in reaching resolution of this Action. On March 12, 2020, the Parties participated in a settlement conference with the Honorable Jeffrey Cole. The Parties reached an agreement on the material terms of the Settlement.

Lurking throughout the process in this case was not only the Defendant's financial condition under normal circumstances, but also the impact of the COVID-19 Pandemic. As a result of the forced prohibition against in-restaurant dining, and mass-layoffs occurring in the restaurant industry that inevitably impacted many Class Members, a settlement in this case was warranted by everyone involved. The deal will allow Class Members to receive a sizable check (without any need for submitting a claim form, checks are being mailed to all Class Members) at a time when many of them desperately need the money.

### III. SUMMARY OF SETTLEMENT TERMS

#### A. The Proposed Settlement Class and Class Period

The Parties seek preliminary approval of the following Settlement Class:

> All individuals who worked at a Nando's restaurant in Illinois and who enrolled in the fingertip scanning feature of the Point of Sale device at any Nando's location in the state of Illinois from May 20, 2015 to October 1, 2019.

Exhibit 1, Agreement, § 1.32. There are 1,427 proposed Class Members. *Id.* at § 11.1. Defendant has provided a Settlement Class List attached as Exhibit C to the Settlement Agreement.

### B. Payment of Maximum Gross Settlement Amount

The Maximum Gross Settlement Amount is $1,427,000.00. Exhibit 1, Agreement, § 1.17. The estimated Class Size is 1,427 Class Members. *Id.* Defendant has agreed to pay the Maximum Gross Settlement Amount in full settlement of this action. *Id.* at § 2.1. Subject to Court approval, the Maximum Gross Settlement Fund shall be used to pay Class Members their settlement awards, Class Counsel's attorneys' fees and costs, Settlement Administration expenses, and an incentive award to the Class Representative. *Id.* The Maximum Gross Settlement Amount will be paid to Class Members over two distributions made eighteen (18) months apart. As part of the First Distribution, each Settlement Class Member will receive as his or her portion $1/1,427^{th}$ of the remainder of $1,350,000 less approved costs. As part of the Second Distribution, each Settlement Class member will receive as his or her portion $1/1,427^{th}$ of $77,000. *Id.* at § 2.4.d. The second payment was allowed as a result the Defendant's financial condition; restaurants are struggling with cash flow as a result of COVID-19's forced closures.

### C. Direct Payments to Class Members

The Settlement Agreement does not require Class Members to submit a claim form to receive settlement awards. Exhibit 1, Agreement, § 2.1. Class Members automatically get checks mailed to them. The Defendant will provide the last known address for the Class Members. In employment cases, these addresses tend to be reliable as tax forms are sent to employees. However, because some employees move, the Settlement Administrator will further investigate whether the addresses are valid by utilizing the National Change of Address database to ascertain if Class Members moved. Class Members will have 150 days to cash their Settlement Award. Attach. 1, Agreement, Exhibit 1, Agreement, § 2.1.a.v. Checks not cashed within the deadline are void and any void Settlement Payments will be returned to the Defendant. *Id.* at § 2.4.f. By not

3

requiring Class Member to submit claims, Plaintiff believes that this structure will result in the highest maximum percentage going to the Class Members. The notice process in similar BIPA employment class action settlements have resulted in a high percentage of class notices being delivered to class members and checks cashed as the chart below demonstrates:[1]

| BIPA Case Name | Jurisdiction | Notices reported Delivered | Checks Cashed |
|---|---|---|---|
| *Nemenski v. Jamco Prods., Inc.* | Cir. Ct. Winnebego Cty., Ill. | 141 of 143 (98%) | 135 of 143 (94%) |
| *Adams v. World Hyundai* | Cir. Ct. Cook Cty., Ill. | 197 of 204 (96%) | 185 of 204 (90%) |
| *Guerrero v. Bob's Discount Furniture LLC* | Cir. Ct. Cook Cty., Ill. | 219 of 225 (97%) | Unknown |
| *Dixon v. Wash. & Jane Home* | N.D. Ill. | 1,361 of 1,379 (98%) | 1,267 of 1,379 (92%) |
| *Lloyd* v. *Xanitos,* 18 CH 15351 | (Cook Cty. Cir. Ct.) | Unknown | 210 of 225 (92.7%) |

D.   **Release of Claims**

As more fully described in the Settlement Agreement, Class Members who do not exclude themselves from the Settlement will release all causes of action or claims against any of the Released Parties that were asserted or could have been asserted based on allegations in the Complaint, including any amendment thereto, or otherwise in the Action. Exhibit 1, 1.26.

E.   **Settlement Administration**

The Parties have selected Analytics, LLC to act as the Settlement Administrator. Exhibit 1, Agreement, § 1.31.

F.   **Notice of Settlement**

---

[1] This data is in line with one of the most comprehensive and current study of claims rates as reflected in <u>Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns; An FTC Staff Report</u> (September 2019). [1] Under the Federal Trade Commission's study, as detailed on page 21, the median claims rate (what is not being used in this case) is 10% while the median check cashing rate was 90% (with checks mailed out, as here). Significantly, here, the FTC study further found that "average check-cashing rates tended to increase as median redress amount increases" and given the substantial check from a known source (a current or former employer), this bodes well for a high check cashing rate.

4

The Parties' proposed notice program includes a proposed Notice of Class Action Settlement ("Class Notice," Exhibit B to Agreement), that notifies them, among other things, of the claims in the case, the Settlement Fund, the anticipated net settlement amount available for distribution to Class Members, the amount requested for Class Counsel's fees and costs, and the incentive award requests. Exhibit 1, Agreement, Ex. B. Class Members will receive their notices by first-class mail from the Settlement Administrator, with additional avenues available to them thereafter to obtain more information about the Settlement. *Id.*

### G. Incentive Awards

The Settlement Agreement provides that the Class Representative will apply for an incentive award of $7,500. Exhibit 1, Agreement, § 8.3. This award is in addition to the payment that the Class Representative will receive as her *pro rata* share of the Net Settlement Amount. The Class Notice will advise Class Members about the incentive award request. Exhibit 1, Agreement, Ex. B. As Class Counsel will explain in their motion for final approval, the Class Representative merits this award because she pursued this lawsuit in her own name, which carries a risk of retaliation from future employers, and she has conferred with Class Counsel, and has recovered substantial settlement payments for Class Members.

### H. Attorneys' Fees and Costs

Class Counsel will apply to the Court for payment of attorneys' fees and costs from the Settlement Fund. Under the Agreement, the total fees sought shall not exceed one-third of the Settlement Fund plus unreimbursed costs. Exhibit 1, Agreement, § 8.1. The Class Notice will advise Class Members about the request for Class Counsel's fees and costs. Exhibit 1, Ex. B.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A. Settlement of Class Action Litigation is Favored

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;
(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq*. With this Motion, Plaintiff requests that the Court take the first step in process by granting preliminary approval of the proposed Settlement.

Rule 23 was amended effective December 1, 2018. Before then, Rule 23 did not address standards for preliminary approval. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MBK) (JO), 2019 WL 359981, at *11 (E.D.N.Y. Jan. 28, 2019). At the preliminary approval stage, district courts decided whether the proposed settlement fell "within the range of possible approval." *Kou Thao Vang v. KeyTronicEMS*, No. 17-cv-5408, 2019 WL 337589, at *1 (D. Minn. Jan. 28, 2019); "Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment*

*Card*, 2019 WL 359981, at *12 (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

    **B.    The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)**

        **1.    The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)**

Class Counsel and their client agreed to participate in an early settlement conference in this case to see whether the parties could reach a settlement that provides meaningful relief to Class Members without unnecessary delay and to mitigate litigation risk. The Settlement provides meaningful monetary and non-monetary relief, without a claims process, and with an appropriately tailored release of claims.

        **2.    The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)**

The Settlement was the result of a settlement conference with the Honorable Jeffrey Cole. In this context, the Settlement was the result of arms-length negotiations. *See Lucas v. Vee Pak, Inc.,* No. 12cv-09672, 2017 WL 6733688, at *12 (N.D. Ill. Dec. 20, 2017).

        **3.    The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)**

The Class Representative claims that she and potential Class Members are entitled to $1,000 per violation if they prove Defendant's violations of BIPA were "negligent." 740 ILCS 14/20(1). Based on this damages theory, the Class Representative believes the value of the potential class's claims is between $1,000 and $2,000.[2] The gross recovery of $1,000.00 per class member is a meaningful recovery given the range of potential damages and merits settlement

---

[2] While BIPA allows recovery of $5,000 per violation for "intentional" or "reckless" violations, the Class Representative does not believe she had a reasonable chance of proving intentional or reckless conduct. BIPA's requirements are straight-forward and simple to follow. The Class Representative believes Nando's was simply not aware of BIPA's requirements before this lawsuit was filed.

7

approval. *See In re Ravisent Techs., Inc. Sec. Litig.,* No. Civ.A.00-CV-1014, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted). Other BIPA settlements have been for much less relief. Some have been for zero cash and given the class credit monitoring. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cty. Jun. 6, 2018). Others have required class members to make claims in order to receive relief that are capped at a certain amount. *E.g.*, *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) ($270 per claimant with credit monitoring, reverting funds to defendant).

Administering the settlement fund of $1,427,000 in two distributions 18 months apart is also fair and adequate relief for the class. The First Distribution is the gross amount of $1,350,000, and will be used to pay Settlement Administration costs, the Attorney Fee Award, approved costs, and the incentive award. Exhibit 1, Agreement §2.1.b-c & §2.4.c. The remainder will be distributed to class members on a *pro rata* basis. The Second Distribution is $77,000 distributed to class members 18 months later on a *pro rata* basis. *Id.* at §2.1.d & §2.4.d. The goal of the parties was to achieve a settlement of $1,000 per class member. In consideration of Defendant's financial situation, and Defendant's financials were exchanged, achieving this monetary award required that Defendant's payment be spread out over more than one accounting period. The payment structure represents the best alternative negotiated agreement to a single distribution of less money total.

The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

### a. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted.

There is no precedential authority on the BIPA defenses that Defendant's asserted in its answer. As a result, the Parties likely would have spent significant resources briefing contested issues. In addition, Plaintiffs would have hired an expert witness to testify about whether Defendant's timekeeping system collected biometric data covered by BIPA. This likely would have resulted in Defendant hiring its own expert witness. Also, given the recent Seventh Circuit decision of *Bryant v. Compass Group USA, Inc*., 2020 WL 2121463, slip op. at 15−17 (7th Cir. May 5, 2020), which found that the plaintiffs have standing to pursue their claims under 740 ILCS 14/15(b), but not 740 ILCS 14/15(a), the Parties would have engaged in motion practice whether some were subject to remand. Instead of expensive, complicated, and protracted litigation, this Settlement provides significant monetary relief to Class Members now.

### b. Effectiveness of the proposed method of distributing relief to the class, including the method of processing Class Members' claims

Pursuant to the Agreement, the Settlement Administrator will send Class Notice via direct regular mail after running Class Members through a database to obtain an updated best address. Exhibit 1, Agreement, § 4.1. The Settlement Administrator will mail checks to all Class Members who do not timely exclude themselves from the Settlement. *Id.* This is an efficient and effective method of distributing Settlement Payments to Class Members.

### c. The terms of the proposed attorneys' fee award, including timing of payment

Here, Class Counsel seeks an award of one-third of the Settlement Fund as attorneys' fees plus unreimbursed costs. Exhibit 1, Agreement § 8.1   *See, Young v. Rolling in the Dough, Inc.*, 17-cv-07825 (N. D. Ill. Feb. 27, 2020)(citing cases)("The parties' settlement is a 'common fund' settlement. The entire fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of total funds made available, whether claimed or not.").

9

### d. Any Agreement required to be identified under Rule 23(e)(3)

The Settlement Agreement is Attachment 1 to this Motion. Plaintiff also claimed that the Defendant discriminated against her when she was employed. Therefore, she filed a Charge of Discrimination. The Defendant disputed these allegations. To bring a closure to all matters, the parties also have settled the discrimination claim for $5,000; see Exhibit 2 for a copy of that agreement.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

The Settlement treats Class Members equally by calculating their total potential recoveries using the same formula and distributing awards to Class Members on a *pro rata* basis. Exhibit 1, Agreement, §§ 1.27, 2.1.

### C. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)

#### 1. Certification Will Be Appropriate Under Rule 23(a)

To obtain class certification, Plaintiff must demonstrate that she has met the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

##### a. Numerosity

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The class size here is over 1,000 persons, which makes joinder of all members impracticable and satisfies numerosity. Exhibit 1, Agreement, § 11.1.

##### b. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. In *Wal-Mart*

*Stores, Inc. v. Dukes*, the Supreme Court summarized the Rule 23(a)(2) requirement as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Wal-Mart*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011); *see also Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 303 (N.D. Ill. 2010). The claims of all class members can be resolved in a "single stroke" by answering the following common question: did Nando's collect, possess, or disclose Settlement Class Members biometric data without following BIPA's requirements? Answering this common question resolves the question of liability for all Settlement Class Members. Thus, commonality will be met here.

### c. Typicality

The issue of typicality is closely related to that of commonality. A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted); *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). The requirement is meant to ensure that the named representative's claims "'have the same essential characteristics as the claims of the class at large.'" *Oshana*, 472 F.3d at 514, citing, *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993). The claims of the Class Representative and the Settlement Class arise from the same conduct: Nando's use of a finger scan timekeeping system for its Illinois employees allegedly without following BIPA's requirements. Typicality will be met.

### d. Adequacy of the Class Representative

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class

11

representative's interest in the litigation outcome must be sufficiently strong to ensure that she is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 WL 563539, at *5 (N.D. Ill. Oct. 1, 1996).

### i. There Is No Conflict of Interest Between the Class Representative and the Settlement Class

The Class Representative alleges the same claims as the Settlement Class she seeks to represent. Nor does the Class Representative have any interests antagonistic to the class. Rather, the nature of the Class Representative's claim is the same as those of the proposed Settlement Class, and the Class Representative has "a clear stake in a successful outcome – [] damages for [themselves] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* No. 16 C 2895, 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017) (Rule 23 adequacy met even where plaintiff sought different type of damages than proposed class).

### ii. Class Counsel Is Experienced and Qualified

Class Counsel will also fairly and adequately protect the interests of the Settlement Class. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are highly experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts and have handled several BIPA class action lawsuits. Exhibit 4, Fish Decl. Judge Cole was kind enough to offer the following comments

12

about Class Counsel (and defense counsel) in this case:

> *"I would be remiss if I did not note not only the exemplary legal work done by counsel for both parties but also the exceptionally cooperative and collegial efforts of counsel in the case. The plaintiff was represented by David Fish and Mara Ann Balabols of the Fish Law Firm, P.C. in Naperville, Illinois, while the defendant was represented by Patricia Martin of Littler Mendelson, P.C. of St. Louis, Missouri and Melissa Logan of Littler Mendelson, P.C. in Chicago, Illinois. They displayed an extraordinary measure of excellence, courtesy ant patience that are all too rare in today's fractious and overly competitive atmosphere. Their conduct is proof that lawyers can act civilly and courteously in their dealings with each other without sacrificing in the slightest the obligations they owe to their clients. Without the skill and patience that everyone brought to the conference, it would not have had the successful outcome that it did."* [Doc. #31]:

### 2. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class will meet those prerequisites.

#### a. Common Questions Predominate

The Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). This inquiry requires the court to identify "the substantive issues that will control the outcome, assess[] which issues will predominate, and then determin[e] whether the issues are common to the class." *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 398 (N. D. Ill. 2006). "Thus, the Plaintiffs bear the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010) As the court observed in *Johns v. DeLeonardis*, 145 F.R.D. 480, 484-85 (N.D. Ill. 1992): [Rule 23(b)(3)] merely requires that the class claims have a dominant,

13

central focus. Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy? The common question in this case that predominates over any individual issues is whether Nando's collected, possessed, or disclosed Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendant's liability under BIPA for all potential Settlement Class Members and therefore predominates over any individual questions.

### b. A Class Action is a Superior Mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Moreover, "because of the small individual recovery, many potential plaintiffs may not even bring their claims." *Chavez, et al. v. Don Stoltzner Mason Contractor, Inc.,* 272 F.R.D. 450, 456 (N.D. Ill. 2011). "This situation makes the Plaintiffs' claims ideal for resolution as a class action." *Kernats*, 2010 WL 4193219, at *8. Here, the alternative to class resolution is over 1,400 individual lawsuits for recoveries possibly as low as $1,000, plus attorneys' fees and costs. As each case would require resolution of identical factual and legal issues, the resulting burden on the Court and the litigants is obvious.

### D. Plaintiff's Notice Program and Notice Form Merit Approval

14

The proposed Class Notice, attached to the Agreement as Exhibit B complies with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The proposed Class Settlement Notice exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B). In addition, the plan for the Settlement Administrator to distribute individual notices directly to Class Members by U.S. mail is reasonable. Exhibit 1, Agreement, § 4.1.

## VIII. Scheduling the Final Approval Hearing Is Appropriate

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. Class Members, or their counsel, may be heard in support of or in opposition to the Settlement. The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e). The Court should schedule the Final Approval Hearing.

## IX. CONCLUSION

Because the Settlement provides direct and significant monetary relief to Class Members who might have recovered nothing without the Settlement, the Court should grant preliminary approval and enter the Proposed Order of Preliminary Approval, attached here as Exhibit 3.

                                                    Respectfully submitted,

Dated: June 15, 2020

                                                    /s/ David Fish
                                                    One of Plaintiff's Attorneys