## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and General Release (hereinafter referred to as the "Agreement") is made by and between Nando's Restaurant Group, Inc. (hereinafter referred to as the "Company") and Katherine Martinez (hereinafter referred to as "Ms. Martinez").

WHEREAS, Ms. Martinez filed Charges of Discrimination against Company with the Illinois Department of Human Rights and the United States Equal Employment Opportunity Commission, styled *Katherine Martinez v. Nando's Restaurant Group, Inc.*, alleging among other things ancestry discrimination, sexual harassment, and retaliation;

WHEREAS, Ms. Martinez subsequently filed a Complaint with the Illinois Human Rights Commission, styled *Katherine Martinez v. Nando's Restaurant Group, Inc.*, alleging among other things ancestry discrimination and sexual harassment (collectively the Charges and the Complaint are referred to as the "Action");

WHEREAS, the Company has denied and continues to deny and dispute the allegations contained in the Action;

WHEREAS, Ms. Martinez and the Company desire to settle the Action without any further proceedings; and

NOW, THEREFORE, in consideration of the foregoing and in consideration of the terms, covenants, promises and conditions set forth below, the parties agree as follows:

**1.** **<u>Payment.</u>** The Company agrees that within thirty (30) calendar days of the Company's receipt of all of the following: (1) this Agreement executed by Ms. Martinez; (2) a valid, complete, and current IRS Form W-9 from Ms. Martinez; and (3) a valid, complete and current IRS Form W-4 from Ms. Martinez, the Company will make a payment totaling ($5,000) (the "Payment") that shall be distributed to Ms. Martinez as follows:

(a)     a check payable to Katherine Martinez in the gross amount of Two Thousand Five Hundred Dollars and No Cents ($2,500.00), less any applicable withholdings and deductions, as wage-based compensatory damages for which an IRS Form W-2 will be issued. The Company shall report this amount as it would generally report the payment of wages to its employees.

(b)     a check payable to Katherine Martinez in the gross amount of Two Thousand Five Hundred Dollars and No Cents ($2,500.00) for alleged emotional distress damages related to her claims in the Action.  The Company will issue an IRS Form 1099 to Martinez for this payment.

2.     **Tax Liability.** Ms. Martinez acknowledges and agrees that the Company has made no representations to Ms. Martinez regarding the tax consequences of any amounts received by Ms. Martinez pursuant to this Agreement. Ms. Martinez agrees to bear all tax consequences, if any, attendant upon the payment of the above-recited sums. Ms. Martinez further agrees to hold the Company harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums.  In the event the Company receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against the Company, the Company shall promptly, after receipt of such written notice, notify Ms. Martinez by letter sent to counsel for Ms. Martinez.  If it is finally determined that the Company is required to pay both its tax obligation and the tax obligation of Ms. Martinez regarding any settlement amount paid to Ms. Martinez, then Ms. Martinez will indemnify the Company for payment of Ms. Martinez's tax obligation and any related assessed interest and penalties.

3.     **General Release and Waiver and Covenant Not To Sue.**  Ms. Martinez agrees to forever waive, release, and discharge the Company, including its parents, successors,

predecessors, divisions, subsidiaries and former subsidiaries, related companies and affiliates, and their respective benefit plans, and, collectively, their officers, directors, attorneys, other legal representatives, insurers, fiduciaries, agents, and employees, past and present (collectively referred to as "the Released Parties") from any claims arising from the Action, as well as any and all other claims, actions, causes of action, obligations for damages (including, but not limited to, compensatory, exemplary, and punitive damages), losses, expenses, attorneys' fees or costs, back pay, loss of earnings, debts, reinstatement and any and all other demands which the Ms. Martinez may have against the Released Parties arising out of Ms. Martinez's employment relationship with the Company, to the effective date of this Agreement. This includes but is not limited to a release of all rights and claims Ms. Martinez may have related to:

(a) **the Action** or that could have been raised in the Action or any charge or grievance;

(b) **Anti-Discrimination Statutes,** such as Title VII of the Civil Rights Act of 1964, as amended (prohibits discrimination in employment based on race, color, national origin, religion, sex or pregnancy); the Civil Rights Act of 1991 (prohibits discrimination); Section 1981 of the Civil Rights Act of 1866 (prohibits discrimination); the Americans With Disabilities Act (prohibits discrimination in employment based on disability); the Genetic Information Non-Disclosure Act; the Equal Pay Act, the Illinois Human Rights Act;

(c) **Federal and State Employment Statutes,** such as the Fair Labor Standards Act; the Family Medical Leave Act (FMLA); the Worker Adjustment and Retraining Notification (WARN) Act; the Employee Retirement Income Security Act; the Consolidated Omnibus Budget Reconciliation Act (COBRA); Illinois Wage Payment and Collection Act; and/or any other federal, state, local, or municipal statute, law constitution, ordinance or regulation;

(d) **Other laws and Claims,** such implied or express employment contracts; public policy or tort claims; retaliatory discharge claims; negligent hiring, retention or supervision claims; defamation claims; wrongful discharge claims; intentional infliction of emotional distress claims; invasion of privacy claims; intentional interference with contract claims; negligence claims; detrimental reliance claims; any covenant of good faith and fair dealing claims; loss of consortium claims; promissory estoppel claims; personal injury claims; common law claims; claims for compensatory or punitive damages; claims for back pay; claims relating to legal restrictions on the Company's right to terminate employees or any other claim

arising out of or relating to Ms. Martinez's employment with the Company to the date of this Agreement; and

(e) **Benefit Plans,** such as any Company stock option, bonus, incentive compensation, commission, medical, dental, life insurance, retirement, disability, and other compensation or benefit plans.

Ms. Martinez is not releasing any claims that arise after executing this Agreement, nor is Ms. Martinez releasing any claims that cannot be waived by law. In addition, Ms. Martinez is not releasing her claim under the Biometric Information Privacy Act asserted in *Katherine Martinez v. Nando's Restaurant Group, Inc.,* Case No 1:19-cv-07012, a class action alleging violations of the BIPA ("Martinez's BIPA Class Action"). Nothing herein shall be construed to apply to a release or compromise of any of any claim in Martinez's BIPA Class Action. Notwithstanding the foregoing, nothing in this Agreement shall constitute a release by Ms. Martinez of vested retirement benefits, if any, Ms. Martinez earned during the period of any active employment under any Company qualified retirement plans, as determined under the official terms of those plans, or any claims which Ms. Martinez cannot waive by law or claims for breach of this Agreement.

In addition, Ms. Martinez agrees never to sue the Released Parties in any forum for any claim covered by the above waiver and release language. If Ms. Martinez violates this General Release and Waiver by suing any of the Released Parties and should such litigation be found to violate the provisions of this Agreement, Ms. Martinez shall be liable to the Company for its costs and attorneys' fees in defending such litigation.

4.     **Withdrawal of the Action**.  Within 7 days of her execution of this Agreement, Ms. Martinez agrees to withdraw or dismiss the Complaint and the Charge by: (1) submitting a withdrawal to the Illinois Human Rights Commission and the Illinois Department of Human Rights and (2) submitting a Request for Withdrawal of Charge of Discrimination, substantially similar to EEOC Form 154 to the EEOC.

5.     **No Other Pending Claims.**  Ms. Martinez represents and warrants that other than the Action and the BIPA Class Action, Ms. Martinez has filed no other pending claims, lawsuits, charges, grievances or causes of action of any kind against the Company and/or Released Parties, and that, to the best of Ms. Martinez's knowledge, Ms. Martinez possesses no claims (including claims under the Fair Labor Standards Act ("FLSA"), or wage claims, and workers compensation claims) other than those related to the Action (all of which Ms. Martinez is releasing by this Agreement).  Ms. Martinez further represents and warrants that Ms. Martinez has received any and all compensation to which Ms. Martinez may have been entitled (including overtime), and that Ms. Martinez is not aware of any facts or circumstances constituting a violation by the Company and/or the Released Parties of the FLSA or other wage payment laws. Ms. Martinez further represents and warrants that Ms. Martinez has not suffered any on-the-job injury while employed by the Company for which Ms. Martinez has not already filed a claim.

6.     **Communications With Government Agencies.**  Nothing in this Agreement precludes Ms. Martinez from filing an administrative complaint, cooperating or participating in an investigation or proceeding, reporting any allegations of criminal conduct or unlawful employment practices, or otherwise communicating with the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), the Occupational Safety and Health Administration ("OSHA"), the Securities and Exchange Commission ("SEC"), or any other federal, state or local agency charged with the enforcement of any laws. Further, nothing in this Agreement precludes Ms. Martinez from testifying in an administrative, legislative, or judicial proceeding concerning alleged criminal conduct or alleged unlawful employment practices regarding the Company, its agents, or employees, when Ms. Martinez has been required or requested to do so pursuant to a court order, subpoena, or written request from an administrative

agency or the legislature. However, Ms. Martinez acknowledges that the consideration provided in this Agreement shall be the sole relief provided for the claims released in this Agreement, and Ms. Martinez expressly acknowledges and agrees to waive any and all rights to recover personal monetary damages or other recovery against the Company for any claim released in this Agreement. Ms. Martinez further agrees to never seek or accept any personal damages, remedies, or other relief with respect to any claim released in this Agreement and waives the right to any individual monetary recovery in any action or lawsuit initiated by the EEOC, the NLRB, or any other federal, state or local agency charged with the enforcement of any laws, except for any right Ms. Martinez may have to receive a payment from a government agency (and not the Company) for information provided to the government agency.

7.    **No Admission of Liability.** It is understood and agreed by the parties that this Agreement represents a compromise settlement of disputed claims, and that the promises and payment in consideration of this Agreement shall not be construed to be an admission of any liability or wrongdoing by any party to any other party or to any other person.

8.    **Non-disparagement.** Effective the date Ms. Martinez signs this Agreement, and with the exception of truthful information provided pursuant to valid legal process or in connection with an investigation conducted by the EEOC, NLRB, OSHA, SEC, or a comparable state or local agency, or any other governmental agency charged with enforcing anti-discrimination or other laws, Ms. Martinez agrees not to disparage the Company or the Released Parties in any manner likely to be harmful to them or their business, business reputation, or personal reputation. Ms. Martinez agrees that the requirements and obligations in this Paragraph serve the mutual interests of Ms. Martinez as well as the Company in ensuring an amicable separation between the Parties.

Provided, however, nothing herein shall prevent Ms. Martinez from completing her duties as a putative class representative in the BIPA Class Action.

9.    **Waiver of Reemployment.**  In consideration for the Payment in Paragraph 1, Ms. Martinez acknowledges and agrees that Ms. Martinez's employment with the Company has ceased irrevocably and forever and will not be resumed any time in the future.  Ms. Martinez agrees not to seek employment, temporary assignment, or work as an independent contractor, or otherwise seek to be hired, re-hired, employed, re-employed, assigned or reinstated, with the Company or any of the Company's parents, subsidiaries, successors, or affiliates, and expressly waives any right to do so.  Ms. Martinez also agrees that if Ms. Martinez inadvertently applies for employment with any such entities, Ms. Martinez shall immediately withdraw Ms. Martinez's application upon notification.  Ms. Martinez further agrees and recognizes that if Ms. Martinez applies and/or is hired by the Company or any of the Company's parents, subsidiaries, successors, or affiliates, this Agreement is sufficient and appropriate legal grounds for denying employment and/or terminating Ms. Martinez's employment.  Ms. Martinez further agrees that the Company is not obligated to allow Ms. Martinez to perform work for the Company or its parents, subsidiaries, successors, and affiliates in the capacity of an independent contractor.

10.    **No Waiver of Vested Rights.**  Notwithstanding anything else in this Agreement, Ms. Martinez and the Company agree that this Agreement shall not affect, alter, or extinguish any vested right that Ms. Martinez may have with respect to COBRA, any pension, or other retirement benefits to which Ms. Martinez is entitled by virtue of Ms. Martinez's employment with the Company, and nothing in this Agreement shall prohibit Ms. Martinez from enforcing such rights.

11.     **Agreement Concerning Litigation Costs and Attorneys' Fees.**  Ms. Martinez and the Company agree that neither party owes the other any costs or fees, except as otherwise provided in this Agreement.

12.     **Return of Company Property.**  Ms. Martinez represents and warrants that Ms. Martinez has returned all property belonging to the Company, including but not limited to all keys, access cards, identification cards, office equipment, phones or other telecommunications equipment, computers, documents, records, customer files, written materials, electronic information, and any other Company property (originals or copies in whatever form) in Ms. Martinez's possession or under Ms. Martinez's control.

13.     **Binding and Contractual Nature of Agreement.**  This Agreement shall be binding upon the heirs, assigns, administrators, executors, beneficiaries, legal representatives, affiliates, subsidiaries, parents and successors of all parties and shall inure to the benefit of all parties or their heirs, assigns, administrators, executors, beneficiaries, legal representatives, affiliates, subsidiaries, parents and successors.  Ms. Martinez and the Company agree that this Agreement constitutes a contract, and that unless otherwise specified, any action for breach of this Agreement shall be limited to an action for breach of contract, and Ms. Martinez retains no right to institute litigation, or file any charges, lawsuits or complaints against the Released Parties for events that occurred prior to the date the Agreement is signed.

14.     **Interpretation and Governing Law.**  This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against any of the parties hereto. This Agreement is made and entered into in the State of Illinois, and shall in all respects be interpreted, enforced and governed by and under the laws of the State of Illinois without regard to its conflict of law provisions.

15. **Entire Agreement/Severability.** This Agreement constitutes and contains the entire settlement and understanding between the parties concerning the subject matter of this Agreement, and supersedes all prior negotiations, proposed agreements or understandings, if any, among the parties concerning any of the provisions of this document. The parties agree that if any provision of this Agreement or application thereof is held to be invalid, the invalidity shall not affect other provisions or applications of this Agreement.

16. **Waiver**. No waiver of the breach of any of the terms or provisions of this Agreement shall be a waiver of any preceding or succeeding breach of this Agreement.

17. **Execution of Agreement.** This Agreement may be executed in one or more counterparts, and/or by electronic .pdf format or facsimile signature, each of which shall be deemed an original and all of which shall constitute one and the same Agreement.

18. **Voluntary Agreement.** Ms. Martinez understands and agrees as follows:

(a) Ms. Martinez has carefully read and fully understands all of the provisions of this Agreement, which is written in a manner that Ms. Martinez clearly understands;

(b) Ms. Martinez is entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance, and has not been coerced, threatened, or intimidated into signing this Agreement;

(c) By this Agreement, Ms. Martinez is hereby advised to consult with an attorney before signing this Agreement. Ms. Martinez is represented by an attorney, has consulted with an attorney before signing this Agreement, and Ms. Martinez's attorney has reviewed this Agreement;

(d)     Ms. Martinez has been given twenty-one (21) days to consider this Agreement and understands that any change or modification to the Agreement will not extend the twenty-one (21)-day consideration period; and

(e)     Ms. Martinez is not otherwise entitled to the payment and other consideration described in this Agreement.

19.     21.     **Time for revocation.** Ms. Martinez has a full seven (7) calendar days following Ms. Martinez's execution of this Agreement to revoke the Agreement. Ms. Martinez may revoke this Agreement only by giving written notice of Ms. Martinez's revocation addressed to the Company's attorney, Patricia J. Martin, *pmartin@littler.com*, which must be received by midnight on the seventh day following execution of this Agreement.

*The remainder of this page is left intentionally blank.*

**AGREED TO BY:**


**Katherine Martinez**

Dated: _____06/08/2020_____


**NANDO'S RESTAURANT GROUP, INC.**

By: _____

Title: _____CFO_____

Dated: _____JUNE 11TH, 2020_____

4815-3967-5575.4 104792.1002

11